1
2
3
4
5
6
7

8                    **UNITED STATES DISTRICT COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10

11   MACK PRICE,                    )   NO. EDCV 08-01749 SS
                                     )
12                Plaintiff,         )
                                     )
13           v.                      )   **MEMORANDUM DECISION AND ORDER**
                                     )
14   MICHAEL J. ASTRUE,              )
     Commissioner of the Social      )
15   Security Administration,        )
                                     )
16                Defendant.         )
     _____ )

17

18                            **I.**

19                      **INTRODUCTION**

20

21        Mack Price ("Plaintiff") brings this action seeking to overturn the

22   decision of the Commissioner of the Social Security Administration

23   (hereinafter the "Commissioner" or the "Agency") denying his application

24   for Supplemental Security Income ("SSI") and Disability Insurance

25   Benefits ("DIB").   The parties consented, pursuant to 28 U.S.C. §

26   636(c), to the jurisdiction of the undersigned United States Magistrate

27   Judge.   This matter is before the Court on the parties' Joint

28

Stipulation ("Jt. Stip."), filed on July 27, 2009.  For the reasons stated below, the decision of the Commissioner is AFFIRMED.

## II.

### PROCEDURAL HISTORY

Plaintiff filed an application for SSI and DIB on July 24, 2006. (Administrative Record ("AR") 42).  He claimed that his disability onset date was October 20, 2003.  (AR 95).  The Commissioner denied benefits on November 15, 2006.  (AR 49).  On December 11, 2006, Plaintiff filed a request for reconsideration.  (AR 54).  The Commissioner upheld the initial denial of benefits on April 12, 2007.  (AR 57).  On May 4, 2007, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 62).

On April 4, 2008, ALJ Lowell Fortune held a hearing to consider Plaintiff's claims.  (AR 16).  On April 25, 2008, the ALJ found that Plaintiff was not disabled.  (See AR 42-48).  Plaintiff requested a review of the hearing decision on May 15, 2008.  (AR 5).  The Appeals Council denied this request on October 2, 2008.  (AR 1).  Plaintiff filed the instant Complaint on December 5, 2008.

\\
\\
\\
\\
\\
\\
\\

2

### III.

### FACTUAL HISTORY

**A.   Generally**

Plaintiff was born on November 9, 1970 and was 38 years old at the time of the hearing.  (AR 17).  He attended school through eleventh grade.  (Id.).  He claims that he is unable to write, and can only read "a little bit."  (AR 20).  Plaintiff can read "small children's books."  (Id.).  Until October 20, 2003, Plaintiff worked for Albertson's as a forklift driver.  (AR 18-19).  According to Plaintiff, he was fired from his job at Albertson's because of his  schizophrenia.  (AR 21).

Plaintiff claims that he has been unable to work since October 20, 2003 because of his paranoid schizophrenia and the side effects of the medication he takes to control it.  (AR 23).  Plaintiff is married, (AR 18), and has a child.  (AR 30).  He has a driver's license and drives to the grocery store and to his medical appointments.  (Id.).  Plaintiff does not think that he will ever be able to return to work.  (AR 29). He does not want to go back to work.  (Id.).

**B.   Relevant Medical History**

**1.  Treating Physicians**

Plaintiff sought treatment for his paranoid schizophrenia at Vista Community Counseling ("Vista"), beginning June 7, 2006.  (AR 19, 247). Plaintiff complained of life-long depression, paranoia, delusions, and

auditory  hallucinations.    (AR  247).    He  admitted  to  daily  use  of
marijuana  and  "speed,"  starting  at  age  fifteen  and  continuing  to  his
mid-twenties.  (Id.).  However, Plaintiff claimed to have been drug free
for  more  than  ten  years.    (Id.).    At  the  time  of  his  initial  contact
with Vista, the therapist found that Plaintiff was oriented to person,
place,  time,  and  situation,  his  speech  as  within  normal  limits,  and  he
displayed  average  intellectual  functioning.    (AR  250).    Although  the
therapist  reported  that  Plaintiff's  thought  processes  appeared  to  be
within  normal  limits,  she  reported  that  he  had  difficulty  focusing,  and
his  insight  and  judgment  were  "poor  at  times."    (Id.).

Under the orders of Donna Barrozo, M.D., Plaintiff took Trazodone,
Zoloft, and Geodon.  (AR 243).  Plaintiff reported that these drugs were
working.    (AR  233).    With  them,  he  had  no  auditory  or  visual
hallucinations,  no  anxiety  attacks,  and  they  controlled  his  paranoia.
(Id.).    Plaintiff  stated  that  he  wanted  to  continue  with  the  same
medication.    (Id.).    As  his  treatment  progressed  in  2008,  Plaintiff
reported that his paranoia remained under control and that his activity
increased.  (AR 281).  He regularly reported no side effects from the
drugs.  (See, e.g., AR 232-34, 279-87).

On December 8, 2006, Plaintiff visited Dr. Deborah Small, M.D.[1] to
establish  care  with  a  primary  care  physician.    (AR  264).    Dr.  Small
reported that Plaintiff's schizophrenia was stable at the time, and that
he had no specific complaints.  (Id.).  On September 5, 2007, Plaintiff

---

[1]  Both Plaintiff and the ALJ refer to Dr. Small as Dr. Sullivans.
No Dr. Sullivans appears in the record.

returned to Dr. Small to request that she fill out paperwork to help him get disability payments for his schizophrenia. (AR 260-61). Dr. Small again reported that his schizophrenia was stable, but for the first time noted that "his medications [were] highly sedative." (AR 260). Dr. Small provided a "Medical Opinion Re: Ability to do Work-Related Activities" at the request of Plaintiff's counsel. (See AR 269-71). Dr. Small checked off boxes indicating that she found no limit to Plaintiff's ability to stand, walk, or sit during an eight hour day. (AR 269). She checked boxes indicating that Plaintiff could frequently climb stairs and that he had no restrictions from working around machinery. (AR 270-71). Nonetheless, she found that he would need to lie down at unpredictable intervals every day. (AR 270). Additionally, she concluded that "[Plaintiff's] medications for his schizophrenia make him so lethargic he is not safe." (Id.). Due to his medication, Dr. Sullivan found that Plaintiff "should not operate machinery [or] climb stairs." (AR 271).

## 2. Consultative Physicians

On October 10, 2006, Linda Smith, M.D., a board eligible psychiatrist, examined Plaintiff at the Commissioner's request. (AR 203-11). Dr. Smith ultimately concluded that Plaintiff's "psychiatric prognosis [was] fair." (AR 211). She found no impairments during Plaintiff's functional assessment. (Id.).

The main conclusion that Dr. Smith reached as a result of her examination of Plaintiff was that he was not credibly reporting his symptoms. Dr. Smith repeated this conclusion throughout her report:

that Plaintiff "was not credible as a historian," (AR 203), that "[t]here [was] no evidence of [his] claims," (id.), that "[he did not appear to be genuine and truthful," (AR 208), that "there was substantial evidence of exaggeration and manipulation throughout the interview," (id.), and that she "[did] not believe the claims that [Plaintiff was] making and [she did] not believe [Plaintiff] is impaired in his ability to work." (AR 211).

Plaintiff came to Dr. Smith's office with his wife, who filled out Plaintiff's questionnaire. (AR 203). Plaintiff's wife stated that she needed to attend the evaluation with Plaintiff because Plaintiff was unable to talk for himself. (AR 207-08). After Dr. Smith insisted on seeing Plaintiff alone, he agreed. (AR 208). Because Plaintiff "had no problem at all in the interview alone," Dr. Smith assumed that Plaintiff's wife's statements were "pre-rehearsed" so that she would have the opportunity to tell Dr. Smith about Plaintiff's impairments. (Id.).

Plaintiff repeatedly told Dr. Smith that he was paranoid. (See, e.g., AR 204, 205, 207). However, Dr. Smith saw no evidence of paranoia when he calmly waited in her office, during the interview, or when she observed Plaintiff walking calmly through the parking lot after the interview. (AR 207-08). During the interview Plaintiff "smiled and chuckled . . . appropriate to topic." (AR 209).

Dr. Smith did not believe Plaintiff's reports of his symptoms. His descriptions of them were vague, and she concluded that he was "trying to decide what the 'correct' answer should be and what he should say."

6

(AR 204).   When Plaintiff did not know the "correct" answer he would not make a decision about his symptoms.   (Id.).   Plaintiff was vague about whether his auditory hallucinations sounded like they came from inside or outside of his head.   (Id.).   According to Dr. Smith, people who "actually do have auditory hallucinations" tend to perceive them as outside their heads, without any doubt.   (Id.).

Plaintiff did not complain of any side effects of his medication. He claimed he was taking Zoloft and Geodon, and that this medication "helped] sometimes."   (AR 206).   Plaintiff drove himself to the clinic for the interview.   (AR 207).   Dr. Smith described his affect as "animated."   (AR 209).   Dr. Smith found that Plaintiff's Global Assessment of Functioning ("GAF") score was eighty-five, indicating that he was did not even have minimal symptoms.[2]

\\

\\

\\

\\

\\

---

[2] A GAF score is the clinician's judgment of the individual's overall level of functioning.   It is rated with respect only to psychological, social and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. 2000) (hereinafter "DSM IV").

A GAF of 81-90 denotes: "Absent of minimal symptoms (e.g. mild anxiety before an exam), good functioning in all areas, interested and involved in a wide range of activities, socially effective, generally satisfied with life, no more than everyday problems or concerns (e.g. an occasional argument with family members)."   DSM IV at 34.

A State Agency psychiatrist, H. N. Hurwitz, M.D. examined Plaintiff on October 24, 2006. (AR 213-26). Dr. Hurwitz concluded that Plaintiff was "Not Significantly Limited" in sixteen of twenty categories and "Markedly Limited" in none. (AR 213-14). Dr. Hurwitz found Plaintiff to be "Moderately Limited" in

1. The ability to carry out detailed instructions;

2. The ability to maintain attention and concentration for extended periods;

3. The ability to interact appropriately with the general public; and

4. The ability to set realistic goals or make plans independently of others.

(Id.). Dr. Hurwitz found a mild restriction of activities of daily living, and moderate difficulties in maintaining social functioning and maintaining concentration, persistence, and pace. (AR 224). Dr. Hurwitz also found "one or two" episodes of decompensation. (Id.). Dr. Hurwitz ultimately concluded that Plaintiff "can sustain SRTs in a variety of settings and can relate adequately with coworkers and supervisors, but not with the public." (AR 215).

\\
\\
\\
\\

8

### 3.   Plaintiff's Testimony

Plaintiff testified at the hearing. (AR 17-32). According to Plaintiff the side effects of his medication prevent him from working. (AR 23). These side effects include vomiting, dizziness, and fatigue. (Id.). Plaintiff claimed that he told Dr. Barrozo about these side effects. (AR 24).

At the time of the hearing, Plaintiff testified that he was taking Geodon, Lexapro, and Benadryl. (Id.). Although Plaintiff had experienced visual and auditory hallucinations in the past, that medication eliminated them. (AR 25-26). Plaintiff claimed that his senses of touch and smell were inaccurate and that he was paranoid. (AR 26-27). When asked if he felt well-rested in the daytime, Plaintiff responded: "Sometimes. Well, I'm mostly tired . . . ." (AR 28). According to Plaintiff, at the time of the hearing he was still having the side effects of vomiting, dizziness, and tiredness. (AR 28-29). He claimed to be depressed, which he described as feeling "a lot of anger, a lot of hate," as well as "sorrow." (AR 29).

\\
\\
\\
\\
\\
\\
\\
\\
\\

**IV.**

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[3] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).   The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  The steps are:

(1)  Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2)  Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

---

[3]  Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit.  20 C.F.R. §§ 404.1520, 416.910.

(3)   Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)   Is the claimant capable of performing her past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5)   Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante, 262 F.3d at 953-54.  If, at step four, the claimant meets his burden of establishing an inability to perform the past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity, age, education, and work experience.  Tackett, 180 F.3d at 1100; 20 C.F.R. § 416.920(g)(1).  The Commissioner may do so by the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").

11

1   <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1162 (9th Cir. 2001).   When a

2   claimant has both exertional (strength-related) and nonexertional

3   limitations, the Grids are inapplicable and the ALJ must take the

4   testimony of a VE.   <u>Moore v. Apfel</u>, 216 F.3d 864, 869 (9th Cir. 2000).

5

6                               **V.**

7                     **THE ALJ'S DECISION**

8

9      At step one, the ALJ found that Plaintiff had "not engaged in

10  substantial gainful activity since October 20, 2003, the alleged onset

11  date.  (AR 44).

12

13      At step two, the ALJ found that Plaintiff's impairment was

14  affective disorder.  (<u>Id.</u>).  The ALJ determined that this impairment was

15  severe.  (<u>Id.</u>).

16

17      At step three, the ALJ concluded that Plaintiff "does not have an

18  impairment or combination of impairments that meets or medically equals

19  one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix

20  1."  (<u>Id</u>. (internal citations omitted)).

21

22      At step four, the ALJ found that Plaintiff had the residual

23  functional capacity ("RFC") "to perform a full range of work at all

24  exertional levels."  (AR 45).   The ALJ found several nonexertional

25  limitations: "[Plaintiff] can perform simple, repetitive non-public

26  tasks, with no responsibility for safety operations or for the safety of

27  others and no work requiring hypervigilance [sic].  In addition, he is

28  precluded from operating dangerous or fast moving equipment."  (<u>Id.</u>).

The ALJ concluded that Plaintiff could not return to his past relevant work as a forklift operator.  (AR 47).

At step five, the ALJ considered Plaintiff's age, education, work experience, and residual functional capacity.  (AR 48).  He also considered the testimony of the VE that a person in Plaintiff's circumstances would be able to perform the requirements of occupations such as cleaner, hand packer, and hospital cleaner.  (Id.).  The ALJ found that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Id.).  The ALJ then concluded that Plaintiff is not disabled.

## VI.

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720.  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the

13

[Commissioner's] conclusion.'" <u>Aukland</u>, 257 F.3d at 1035 (quoting <u>Penny v. Sullivan</u>, 2 F.3d 953, 956 (9th Cir. 1993)).   If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. <u>Reddick</u>, 157 F.3d at 720-21.

**VII.**

**DISCUSSION**

**A.   The ALJ Gave Appropriate Weight To The Treating Psychiatrist's Opinion**

Plaintiff contends that "the ALJ did not properly consider Dr. [Small's] findings and failed to provide specific and legitimate reasons for doing so." (Jt. Stip. at 4).   This Court disagrees.

Although the treating physician's opinion is entitled to great deference, it is "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 600 (9th Cir. 1999).   "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." <u>Matney v. Sullivan</u>, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984)). When a treating doctor's opinion is contradicted by another doctor, "the Commissioner may not reject his opinion without providing 'specific and legitimate reasons' supported by substantial evidence." <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995).   "The opinion of a nonexamining medical advisor cannot by itself constitute substantial

14

evidence that justifies the rejection of the opinion of an examining or treating physician." <u>Morgan</u>, 169 F.3d at 602.  However, a court can reject such an opinion "based <u>in part</u> on the testimony of a nontreating, nonexamining medical advisor." <u>Id.</u> (emphasis in original); <u>See also</u> <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751-55 (9th Cir. 1989) (affirming an ALJ's decision awarding less weight to a treating physician based on the testimony of a nonexamining physician that was consistent with evidence in the record).  In addition, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings. <u>See</u> <u>Matney</u>, 981 F.2d at 1019; <u>Batson v. Comm'r of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1195 (9th Cir. 2004).

Dr. Small's findings are discussed above in section III.B.1.  Her treatment of Petitioner appears to have been limited to an initial interview establishing care, and one other meeting at which Plaintiff asked for help with his disability paperwork.  Based on these two meetings, Dr. Small filled out the "Medical Opinion Re: Ability to do Work-Related Activities." (AR 269-71).

Despite the brief nature of Dr. Small's relationship with Plaintiff, he argues that she "has indeed established that . . . Plaintiff is significantly limited due to his need to lie down at unpredictable intervals and from the lethargy and sedation that he experiences as a result of taking his psychiatric medications." (Jt. Stip. at 4).  This claim arises from Dr. Small's findings that Plaintiff's "psychiatric medications for schizophrenia are so sedating that he should not operate machinery, climb stairs, or be left alone,"

(AR 271), and that "his medications for schizophrenia make him so lethargic he is not safe." (AR 270). There is no record of Plaintiff complaining about sedation to Dr. Small, so it is unclear how she formed these opinions. The finding of sedation is surprising given that in the course of his treatment Plaintiff generally reported no side effects from his medication, (<u>see, e.g.</u>, AR 232-34, 279-87), and he never reported fatigue so severe that he could not be left alone. To the contrary, Plaintiff on several occasions reported driving a car. (<u>See, e.g.</u>, AR 30, 207).

Dr. Small's conclusions about Plaintiff's sedation and his need to lie down at unpredictable times appear to be based on Plaintiff's own reports, yet others found Plaintiff to be lacking in credibility. Dr. Smith repeatedly observed that Plaintiff lacked credibility and was malingering. The ALJ specifically found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible." (AR 46). Dr. Small presented no clinical findings to support her conclusion that Plaintiff is so sedated by his medication that he is unable to work, but relied entirely on Plaintiff's self-reporting.

Dr. Small's report is also internally inconsistent. Although she concluded that Plaintiff should not operate machinery, she also checked the box indicating no restriction on Plaintiff's ability to work with machinery. (AR 271). Similarly, although Dr. Small found that Plaintiff's sedation would prevent him from climbing stairs, (<u>id.</u>), she also checked the box finding that Plaintiff could climb stairs frequently. (AR 270).

16

Although the ALJ had a specific and legitimate reason for rejecting Dr. Small's findings, he instead included them in the RFC.   In his decision, the ALJ quoted Dr. Small's conclusion that Plaintiff should not be allowed to operate machinery, climb stairs, or be left alone. (AR 47).   Dr. Small was the only physician who recommended that Plaintiff not operate machinery.   As part of the RFC the ALJ found that Plaintiff "is precluded from operating dangerous or fast moving equipment," and cannot do work "requiring hypervigilance [sic]."   (AR 45).   The ALJ therefore gave weight to Dr. Small's finding of sedation and included it in the RFC.   To the extent that the ALJ rejected Dr. Small's conclusion that Plaintiff would be required to lie down at unpredictable intervals throughout the day, there was a specific and legitimate reason to do so.   Dr. Small's findings were brief and conclusory, and were only supported by Plaintiff's questionable self-reporting of his symptoms.   No remand is necessary.

**B.   <u>The ALJ Properly Considered Any Side Effects Of Plaintiff's Medication</u>**

Plaintiff contends that the ALJ erred by not considering the side effects of Plaintiff's medications.   (<u>See</u> Jt. Stip. at 9-12).   Plaintiff argues that this requires a remand.   (Jt. Stip. at 12).   This Court disagrees.

The Ninth Circuit has observed that an ALJ must "consider all factors that might have a significant impact on an individual's ability to work."   <u>Erickson v. Shalala</u>, 9 F.3d 813, 817 (9th Cir. 1993)(citing <u>Varney v. Secretary of SHS</u>, 846 F.2d 581, 585 (9th Cir. 1987).   Such

factors "may include side effects of medications as well as subjective evidence of pain." Erickson, 9 F.3d at 818. However, Plaintiff here presented no evidence that any side effects he may have had were severe enough to interfere with his ability to work, and thereby failed to meet his burden of proof. See Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985) (claimant failed to meet burden of proving that an impairment is disabling where he produced no clinical evidence showing that his prescription narcotic use impaired his ability to work).

At the hearing, Plaintiff testified that the side effects of his medication were "vomiting, dizziness, and [fatigue]." (AR 23). Other than in Plaintiff's testimony, there is little evidence in the record of the side effects Plaintiff reports. While under Dr. Barrozo's care, Plaintiff generally reported no side effects from his medication. (See, e.g., AR 232-34, 279-87). Plaintiff reported being dizzy to Dr. Smith, but he did not mention fatigue or vomiting. (AR 204). Dr. Smith found no evidence of these side effects, noting that Plaintiff's affect was "animated," (AR 209), and that he drove himself and his wife to the examination. (AR 207).

Even though Plaintiff never complained of sedation so severe that he had to lie down at unpredictable intervals throughout the day, and even though Plaintiff is apparently capable of driving a car, Dr. Small still found that Plaintiff's medications "make him so lethargic he is not safe." (AR 270). She recommended that Plaintiff not operate machinery. (AR 271). Even though this conclusion was largely unsupported by the record, the ALJ included the restriction on Plaintiff operating "dangerous or fast moving equipment." (AR 45). Plaintiff has

not demonstrated that any other side effects he may have impair his ability to work.   The ALJ did not err by not considering those side effects when determining Plaintiff's disability.   No remand is required.

**C.    The ALJ's Hypothetical Was Complete**

Plaintiff contends that the hypothetical presented by the ALJ to the VE was incomplete.  (Jt. Stip. at 13-15).   This Court disagrees.

At the hearing, the ALJ presented the VE with the following hypothetical:

Assume an individual the same age, education, and work experience as [Plaintiff].   Further assume the following residual functional capacity.   Physically no limits, mentally this person is able to perform non-public simple, repetitive tasks.   However he should not operate any dangerous or fast-moving machinery and should not be involved in safety operations or responsibility for the safety of others and . . .   should not perform any work requiring hypervigilance [sic].

(AR 32).   Plaintiff contends that this hypothetical was incomplete because the ALJ did not include Dr. Small's findings that Plaintiff would need to lie down at unpredicted intervals, that he should not operate machinery, climb stairs, or be left alone, and also did not include "any mention of Plaintiff's multiple episodes of decompensation."  (Jt. Stip. at 14).

1    In order for the vocational expert's testimony to constitute
2    substantial evidence, the hypothetical question posed must "consider all
3    of the claimant's limitations." Andrews, 53 F.3d at 1044.  However, the
4    ALJ is not required to include limitations for which there was no
5    evidence.   See Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir.
6    2001) (ALJ not bound to accept as true the restrictions set forth in
7    hypothetical if they were not supported by substantial evidence).

8

9    In crafting the hypothetical, the ALJ included all of the
10   limitations supported by the evidence.  As discussed above, the ALJ had
11   good reason to doubt the findings of Dr. Small.  Her conclusions were
12   based on only a cursory examination of Plaintiff.   Additionally, her
13   conclusions relied on Plaintiff's own reporting of his symptoms, and the
14   ALJ determined that Plaintiff was not credible.   Nonetheless, the ALJ
15   included in the hypothetical Dr. Small's recommendation that Plaintiff
16   not operate machinery.

17

18   Plaintiff contends that the hypothetical was insufficient because
19   it did not mention Plaintiff's episodes of decompensation.  (Jt. Stip.
20   at 14).  When Dr. Hurwitz examined Plaintiff for the State Agency he
21   found that Plaintiff had gone through "one or two" episodes of
22   decompensation.  (AR 224).  Plaintiff contends that these episodes of
23   decompensation are reflected in the fact that doctors altered his
24   medications.  (Jt. Stip. at 14).  Plaintiff presents no evidence that
25   these isolated episodes of decompensation amounted to limitations on his
26   ability to work.  Contrary to Plaintiff's suggestion that his periods of
27   decompensation were debilitating, the credible medical evidence from
28   Drs. Small and Barrozo, Plaintiff's own treating physicians, suggested

that Plaintiff's schizophrenia was stabilized by the medication. (See, e.g., AR 233, 264). Because there was no evidence that Plaintiff's episodes of decompensation amounted to on-going limitations on his ability to work, the ALJ did not err by omitting them from the hypothetical. The hypothetical was complete, and no remand is required.

## VIII.

### CONCLUSION

The ALJ properly considered the opinion of Dr. Small, Plaintiff's treating physician. The ALJ properly considered the side effects of Plaintiff's medication. Finally, the hypothetical posed to the VE was complete. Accordingly, Plaintiff's contentions do not warrant remand.

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[4] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: August 14, 2009.                               /S/

_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

---

[4]   This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."